**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

|  |  |
|---|---|
| **ALICIA MENDEZ, individually and on behalf of all other similarly situated,**<br><br>    **Plaintiff,**<br><br>**vs.**<br><br>**THE PROCTER & GAMBLE COMPANY, THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY, and THE PROCTER & GAMBLE POLICY COMMITTEE,**<br><br>    **Defendants.** | **DOCKET NO. 1:26-cv-00120-JPH** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

1

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

ARGUMENT ........................................................................................................................... 3

I. PLAINTIFF'S NOTICE THEORY CANNOT SUPPLY ARTICLE III STANDING. ....... 3

    A. Plaintiff's Standing Theory Impermissibly Collapses Merits into Standing and Must Be Rejected. ........................................................................................ 3

    B. Plaintiff's Injury Is Not Fairly Traceable to the Specific Violations Alleged. ........ 5

    C. Plaintiff's Potential Right to Recover Retrospective Relief Does Not Cure Her Inability to Pursue Prospective Relief. ............................................................. 7

II. PLAINTIFF CANNOT EVADE THE APPLICABLE LIMITATIONS PERIODS BY RECASTING THE WELLNESS PROGRAM AS A SERIES OF NEW VIOLATIONS. ...................................................................................................... 8

    A. Recurring Surcharge Deductions Are Continuing Effects, Not Continuing Violations. ......................................................................................................... 8

    B. Plaintiff's Fiduciary Duty Claims Are Independently Time-Barred Under Section 413 of ERISA. ...................................................................................... 12

    C. Even if the Court Rejects Defendants' Accrual Argument, Plaintiff's Claims Are Limited to a 31-Month Period. .......................................................... 13

III. PLAINTIFF'S REASONABLE-ALTERNATIVE-STANDARD THEORY CANNOT BE RECONCILED WITH THE STATUTE. .................................................. 14

    A. The Statute Expressly Limits Reasonable Alternative Standards to Participants with a Medical Hardship. ................................................................ 14

    B. Plaintiff's "Floor, Not Ceiling" Theory Cannot Be Reconciled with the Statutory Text. .................................................................................................. 15

    C. The Regulations Cannot Eliminate Limitations Congress Expressly Imposed. ............................................................................................ 16

IV. PLAINTIFF'S INTERPRETATION OF THE REASONABLE ALTERNATIVE FREQUENCY LANGUAGE WOULD NULLIFY THE ONCE-PER-YEAR REQUIREMENT. ............................................................................................... 17

V. PLAINTIFF'S NOTICE THEORY CANNOT BE RECONCILED WITH ERISA ......... 20

    A. The Physician-Accommodation Regulation Conflicts with the Statute. .............. 20

    B. Plaintiff Improperly Converts an Alleged Disclosure Omission into Program-Wide Illegality. .................................................................................. 21

VI. ERISA'S FIDUCIARY PROVISIONS DO NOT REACH THE CONDUCT PLAINTIFF CHALLENGES. ...................................................................................... 23

    A. Plaintiff Has Not Alleged a Loss to the Plan or Recoverable Plan Profits. .......... 23

B.      Plaintiff Has Not Plausibly Alleged that the Surcharge Proceeds
Were Plan Assets. ................................................................................................ 24

C.      Plaintiff Challenges Settlor Functions, Not Fiduciary Conduct. .......................... 25

CONCLUSION ................................................................................................................ 26

2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Mr. Grissom's Salads, Inc.*,
No. 99-5207, 2000 U.S. App. LEXIS 14511 (6th Cir. 2000) ...................................................27

*Briggs v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*,
774 F. App'x 942 (6th Cir. 2019) ............................................................................................27

*Corner Post v. Bd. of Governors of Fed. Rsrv. Sys*,
603 U.S. 799 (2024) .................................................................................................................27

*Del Rio v. Toledo Edison Co.*,
130 F. App'x 746 (6th Cir. 2005) .............................................................................................27

*Denoewer v. Union County Industries*,
611 F. Supp. 3d 458 (S.D. Ohio 2020). ECF No. 17 ...............................................................27

*Edes v. Verizon Communications, Inc.*,
417 F.3d 133 (1st Cir. 2005) ....................................................................................................27

*Edwards v. United States*,
371 F. Supp. 2d 859 (W.D. Ky. May 16, 2005) .......................................................................27

*Fallick v. Nationwide Mutual Insurance Co.*,
162 F.3d 410 (6th Cir. 1998) .................................................................................................7, 8

*Fisher v. GardaWorld Cash Servs., Inc.*,
No. 3:24-cv-00837, 2025 U.S. Dist. LEXIS 167251 (W.D.N.C. Feb. 20, 2026) ...................27

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ...................................................................................................................7

*Grae v. Corrections Corp. of America*,
57 F.4th 567 (6th Cir. 2023) .................................................................................................5, 6

*Greogory v. Goodman Mfg. Co., L.P.*,
No. 4:10-cv-23, 2011 U.S. Dist. LEXIS 55490 (E.D. Tenn. May 02, 2011) ..........................27

*Hill v. XPO*,
No. 24-CV-1697 (SFR), 2026 U.S. Dist. LEXIS 69336 (D. Conn. Mar. 31,
2026) ........................................................................................................................................27

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .................................................................................................................27

i

*Miele v. Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund.*,
    72 F. Supp. 2d 88 (E.D.N.Y. 1999) ...................................................................2, 27

*Monks v. Keystone Powdered Metal Co.*,
    78 F. Supp. 2d 647 (E.D. Mich. 2000), *aff'd*, 10 F. App'x 273 (6th Cir. 2001).....................27

*Noel v. PepsiCo*,
    No. 24-cv-7516, 2026 U.S. Dist. LEXIS 41586 (S.D.N.Y. Feb. 27, 2026)....................3, 6, 27

*Plesha v. Ascension Health*,
    No. 4:24-cv-01459, 2026 U.S. Dist. LEXIS 22061 (E.D. Mo. Feb. 3, 2026) ...............1, 4, 5, 6

*Rotkiske v. Klemm*,
    589 U.S. 8 (2019)................................................................................................2, 27

*Schultz v. Glens Falls Hosp.*,
    No. 1:25-cv-00581, 2026 U.S. Dist. LEXIS 64968 (N.D.N.Y. Mar. 26, 2026) ......................27

*Sears v. Union Cent. Life Ins. Co.*,
    222 F. App'x 474 (6th Cir. 2007) .....................................................................................27

*Sec'y of Labor v. Macy's, Inc.*,
    No. 1:17-cv-541, 2021 U.S. Dist. LEXIS 221603 (S.D. Ohio Nov. 17, 2021) .......................27

*Shahid v. Chrysler, LLC*,
    No. 08-CV-10871, 2008 U.S. Dist. LEXIS 45470 (E.D. Mich. Jun. 11, 2008) ......................27

*Shapiro v. Fid. Inv. Institutional Operations Co.*,
    142 F. Supp. 3d 535 (E.D. Ky. Aug. 27, 2015) ....................................................................27

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................................1, 3, 5

*Thole v. U.S. Bank, N.A.*,
    590 U.S. 538 (2020)........................................................................................1, 3, 5

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)........................................................................................1, 3, 4, 5

*Trout v. Meijer*,
    No. 1:25-cv-1378, 2026 U.S. Dist. LEXIS 89941 (W.D. Mich. Apr. 23, 2026).........2, 3, 4, 27

*United States v. Perry*,
    360 F.3d 519 (6th Cir. 2004) ...................................................................................2, 27

*Utility Air Regulatory Group v. EPA*,
    573 U.S. 302 (2014)........................................................................................2, 27

ii

*Wiederhold v. Res-Care, Inc.*,
    No. 4:24-cv-00003, 2026 U.S. Dist. LEXIS 68955 (S.D. Ind. Mar. 31, 2026) .........................27

**Statutes**

42 U.S.C. § 300gg-4(a)(9) ...............................................................................................27

42 U.S.C. § 300gg-4(j)(3)(C).............................................................................................27

42 U.S.C. § 300gg-4(j)(3)(D)(i)..........................................................................................27

42 U.S.C. § 300gg-4(j)(3)(D)(ii).........................................................................................27

42 U.S.C. § 300gg-4(j)(3)(E) .............................................................................................27

Affordable Care Act...........................................................................................................27

Americans with Disabilities Act .......................................................................................27

ERISA ......................................................................................................................1, 5, 8, 27

**Federal Rule**

29 C.F.R. § 2590.702(f)(4)(v).............................................................................................27

Rule 23 ...................................................................................................................................8

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff's opposition confirms that this case turns on legal questions that can and should be resolved at the pleading stage. Although Plaintiff challenges aspects of P&G's tobacco-free wellness program, her claims ultimately rest on four flawed premises: (1) that she can establish standing for notice-based claims without alleging any injury traceable to the alleged disclosure deficiencies; (2) that ERISA requires reasonable alternative standards for all tobacco users regardless of the statutory limitations Congress enacted; (3) that she can evade ERISA's limitations periods by treating the continued operation of a single wellness program as a series of newly accruing violations; and (4) that plan-design decisions regarding the structure of a wellness program may be recast as breaches of fiduciary duty.

Each premise fails because it either asks the Court to disregard the limits Congress enacted, the constitutional requirements Article III imposes, or the settled principles governing ERISA accrual and fiduciary status.

First, Plaintiff lacks Article III standing to pursue her notice-based claims. Her theory improperly collapses standing into the merits by assuming that any alleged violation of ERISA's wellness-program requirements automatically renders the surcharge unlawful and therefore constitutes injury. But Article III requires a concrete injury traceable to the specific conduct challenged. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *Thole v. U.S. Bank, N.A.*, 590 U.S. 538, 544 (2020). Plaintiff never alleges that the omission of physician-accommodation language or the alleged deficiency in the 2024 enrollment materials affected her conduct in any way. *Plesha v. Ascension Health*, No. 4:24-cv-01459, 2026 U.S. Dist. LEXIS 22061 (E.D. Mo. Feb. 3, 2026).

Second, none of Plaintiff's statutory theories can be reconciled with ERISA's text. Congress limited the reasonable-alternative-standard requirement to specified medical

1

circumstances, required only an annual opportunity to qualify for the reward, and did not mandate the physician-accommodation language on which Plaintiff's notice claim depends.  Plaintiff's contrary interpretation on all three of these issues relies on DOL regulations that expand the statute beyond the limits Congress enacted.  *Rotkiske v. Klemm*, 589 U.S. 8, 14-15 (2019); *United States v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004); *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 328 (2014).

Third, Plaintiff's claims are time-barred under the applicable 6-year limitations periods for all her claims because they accrued when she began paying the surcharge in 2017.  *Miele v. Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund.*, 72 F. Supp. 2d 88, 102 (E.D.N.Y. 1999).  But even if this Court rejects Defendants' accrual argument and accept Plaintiff's continuing violations theory, Plaintiff's claims must still be limited to a 31-month period because she concedes she last paid the surcharge in September 2022.  That fact, coupled with the 6-year limitations period Plaintiff agrees controls here, limits her claims to the period from February 03, 2020 through September, 2022 (31-months).

Finally, Plaintiff's fiduciary-duty and prohibited-transaction claims fail because they challenge plan-design decisions rather than fiduciary conduct.  Plaintiff does not plausibly allege a loss to the Plan, recoverable Plan profits, or actionable misuse of Plan assets.  Recent decisions addressing these same surcharge theories—including *Trout v. Meijer,* No. 1:25-cv-1378, 2026 U.S. Dist. LEXIS 89941, at *31-37 (W.D. Mich. Apr. 23, 2026)—confirm that such allegations do not state a fiduciary-duty claim.

For these reasons, and those set forth below and in Defendants' opening memorandum, the Complaint should be dismissed.

## ARGUMENT

### I.  PLAINTIFF'S NOTICE THEORY CANNOT SUPPLY ARTICLE III STANDING.

#### A.  Plaintiff's Standing Theory Impermissibly Collapses Merits into Standing and Must Be Rejected.

Plaintiff's standing theory reduces to a syllogism that assumes the merits conclusion she must prove: (1) P&G's wellness program violates ERISA's safe harbor requirements; therefore (2) the entire program is unlawful; therefore (3) the surcharge is unauthorized; therefore (4) Plaintiff suffered concrete monetary injury.  But standing is a threshold jurisdictional inquiry that must be assessed independently of the merits.  *TransUnion LLC*, 594 U.S. 413 at 426-27.  If the alleged unlawfulness of the surcharge is itself the legal conclusion Plaintiff seeks to establish, it cannot simultaneously serve as the predicate for standing.

The Supreme Court has repeatedly rejected this type of reasoning.  Congress's creation of a statutory prohibition does not relieve courts of their obligation to determine whether a plaintiff suffered a concrete injury under Article III.  *Id.* at 426; *see also Spokeo, Inc.*, 578 U.S. 330 at 341; *Thole*, 590 U.S. 538 at 544 ("The Court has emphasized that Article III standing requires a concrete injury even in the context of a statutory violation.") (citing *Spokeo* 578 U.S. 330 at 341)).

In other words, the relevant question is not whether Plaintiff has alleged a statutory violation.  It is whether she suffered a concrete injury fairly traceable to the specific conduct she challenges.  To hold otherwise would mean that every plaintiff in every case has standing simply by alleging that the defendant violated the law, because by definition a successful merits claim establishes that the defendant acted unlawfully and caused harm.  Article III demands more.

The cases Plaintiff relies on—*Bokma*, *Wilson*, *Bailey*, *Noel*, and *Trout*—all commit the same reverse-engineering error.  They accept, at the standing stage, Plaintiff's ultimate merits conclusion (that the program is noncompliant and therefore the surcharge is unlawful), and then

3

reason backward from that assumed conclusion to find an injury.  But that analysis assumes the merits conclusion before standing has been established.  That a plaintiff may ultimately prevail on a statutory claim does not eliminate the independent requirement to demonstrate a concrete injury caused by the particular violation at issue.  *TransUnion*, 594 U.S. at 426-27.

That distinction is critical here.  Plaintiff's notice claim is based on two alleged disclosure deficiencies: (1) the omission of physician-accommodation language from materials describing the wellness program; and (2) the absence of contact information in the 2024 enrollment materials. ECF No. 1 at PageID 12, 14, 21-22 (¶¶ 29, 34, 59-60).  Yet Plaintiff does not allege that either omission affected her conduct in any way.  She does not allege that she sought physician accommodation, attempted to enroll in the cessation program, requested additional information, or would have acted differently had the challenged disclosures appeared.  Accordingly, the alleged disclosure deficiencies cannot establish standing merely because Plaintiff also paid a surcharge. In short, *TransUnion* does not save Plaintiff's standing theory.  It defeats it.

Likewise, *Trout*, 2026 U.S. Dist. LEXIS 89941, on which Plaintiff relies for its analysis of the physician-accommodation language, did not squarely address whether a plaintiff who never attempted to use the alternative standard has standing to challenge the sufficiency of its disclosure. Rather, *Trout* addressed the merits of whether the regulation validly requires the physician-accommodation statement—not whether a plaintiff who was never deterred by its absence has a concrete, traceable injury.

Finally, Plaintiff dismisses *Plesha*, 2026 U.S. Dist. LEXIS 22061, as an outlier, but that characterization mistakes popularity for correctness.  As the court in *Plesha* recognized, standing requires the plaintiff to demonstrate a concrete injury caused by and traceable to the specific

4

violations alleged—not an injury whose characterization as unlawful depends upon the plaintiff prevailing on the merits. *Id.* at *17-19.

*Plesha* is the only decision to rigorously apply *TransUnion*'s standing framework to ERISA surcharge disclosure claims, correctly finding that the mere payment of a surcharge does not establish standing to challenge a disclosure deficiency absent a causal connection between the alleged omission and the plaintiff's injury.  That conclusion follows directly from *TransUnion*, *Thole*, and *Spokeo*, and the Sixth Circuit's binding decision in *Grae v. Corrections Corp. of America*, 57 F.4th 567, 571 (6th Cir. 2023): "a chorus of precedent all sings the same tune: to have standing, litigants must have suffered adverse effects from the denial of information."

This Court should follow *Plesha* and reject Plaintiff's attempt to establish standing based solely on the payment of a surcharge while collapsing traceability with a merits question.  The number of district courts that have reached the opposite conclusion—without meaningfully engaging with the traceability requirement as applied to disclosure claims—does not make their approach correct.

**B.**     **Plaintiff's Injury Is Not Fairly Traceable to the Specific Violations Alleged.**

Even setting aside the circularity problem, Plaintiff fails to satisfy the traceability requirement of Article III on her notice claim.  Count II is based on two alleged disclosure deficiencies: (1) the omission of the physician-accommodation statement from materials describing the wellness program; and (2) the absence of contact information from the 2024 enrollment materials.  ECF No. 1 at PageID 12, 14, 21-22 (¶¶ 29, 34, 59-60).  But Plaintiff does not and cannot allege that either disclosure deficiency caused her to pay the surcharge.

As to the physician-accommodation statement, Plaintiff never alleges that she would have sought a physician's recommendation had the accommodation language been included.  She never alleges that she attempted to enroll in the cessation program or that the absence of the physician-

accommodation notice deterred her from doing so.  She never alleges any set of circumstances in which a compliant notice would have altered her behavior.  In other words, with or without *any* reference to the physician accommodation language, Plaintiff would be in the exact same place. *See Plesha*, 2026 U.S. Dist. LEXIS 22061, at *19 (finding that "Plaintiff has not demonstrated how her behavior would have changed with a compliant notice.  Put another way, Plaintiff would be in the exact same place with or without the purported defects in the notice.").  Even putting aside *Plesha*, the Sixth Circuit requires "adverse effects from the denial of information" to establish standing on an informational claim.  *Grae* 57 F.4th 567 at 571.  Plaintiff alleges no such adverse effects from the omitted physician accommodation language.

As to the alleged missing information in 2024, the traceability problem is even more acute. Plaintiff concedes she stopped paying the surcharge in September 2022 and was no longer a plan participant by June 2024.  She did not pay the nicotine surcharge in 2024, the year for which the enrollment materials allegedly lacked the required contact information.  She therefore suffered no injury whatsoever from the 2024 disclosure deficiency, because one cannot be harmed by an omission in materials governing a program in which one no longer participates and for which one is no longer paying.  *See Noel v. PepsiCo*, No. 24-cv-7516, 2026 U.S. Dist. LEXIS 41586, at *25-27 (S.D.N.Y. Feb. 27, 2026) (holding that plaintiff lacked standing for claims arising after she ceased paying the surcharge).  Moreover, Plaintiff admits that prior to 2024, P&G provided the required contact information.  She therefore cannot bootstrap the alleged 2024 deficiency backward to establish standing for a period in which the materials were compliant on this point.

In short, Plaintiff's notice claim fails the traceability requirement because the specific disclosure deficiencies she identifies—the physician-accommodation statement and the 2024

missing information—bear no causal connection to her payment of the surcharge during the years she actually paid it.

### C. Plaintiff's Potential Right to Recover Retrospective Relief Does Not Cure Her Inability to Pursue Prospective Relief.

In her opposition, Plaintiff concedes that she cannot pursue injunctive relief. ECF No. 17 at PageID 589-90. That concession should end the inquiry, but Plaintiff attempts to salvage her prospective claims through a theory that her standing to seek retrospective monetary damages— combined with the putative class vehicle—somehow permits her to obtain prospective injunctive relief on behalf of absent class members. *Id*. Notwithstanding Defendants' other arguments, this theory is foreclosed by Article III. A plaintiff who concedes she individually lacks standing to seek prospective relief cannot circumvent that constitutional limitation by invoking a class action.

The principle is straightforward: standing "is not dispensed in gross," and a plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Just last year, the court in *Chirinian v. Travelers Co.* applied this principle in a similar tobacco surcharge case. No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at *11 (D. Minn. Jul. 29, 2025). There, as here, the plaintiff was a former plan participant who lacked standing to pursue prospective injunctive relief but argued she could nonetheless seek such relief on behalf of the plan or the class. The court rejected that argument, holding that a plaintiff "must first show that she individually has Article III standing to seek a form of relief before she can seek that relief on behalf of others." *Id.* Because the plaintiff in *Chirinian* "personally lack[ed] standing to seek prospective injunctive relief, she [could not] seek such relief on behalf of the Plan." *Id.*

Plaintiff's reliance on *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), is misplaced. ECF No. 17 at PageID 589-90. *Fallick* did not involve a plaintiff who lacked

7

standing to seek the relief at issue.  Rather, the plaintiff had already established individual standing and the dispute concerned whether he could represent participants in other plans administered by the same defendant.  162 F.3d at 422-24.  Indeed, *Fallick* expressly reaffirmed that "individual standing is a prerequisite" to class representation and that a plaintiff "cannot acquire such standing merely by virtue of bringing a class action."  *Id.* at 423.  Far from helping Plaintiff, *Fallick* reinforces Defendants' position: the threshold constitutional requirement of individual standing must be satisfied before any class-based analysis under Rule 23 begins.

Moreover, the question in *Fallick* was whether a named plaintiff, who had established individual standing under his own ERISA plan, could represent class members participating in *different* plans administered by the same defendant, where the gravamen of the challenge was the defendant's uniform methodology affecting all plans.  *Id.* at 422-23.  The Sixth Circuit held that once the plaintiff's individual standing was established, his ability to represent participants in other plans was properly analyzed under Rule 23's criteria—not as an additional standing question.  *Id.* at 423-24.  That holding presupposes what Plaintiff here lacks: individual standing to pursue the form of relief in question.  *Fallick* simply does not address whether a plaintiff who admittedly lacks standing to seek prospective relief can acquire that standing through the class mechanism.

## II. PLAINTIFF CANNOT EVADE THE APPLICABLE LIMITATIONS PERIODS BY RECASTING THE WELLNESS PROGRAM AS A SERIES OF NEW VIOLATIONS.

### A. Recurring Surcharge Deductions Are Continuing Effects, Not Continuing Violations.

Relying exclusively on an incorrect holding in *Chirinian*, Plaintiff's limitations argument rests on the premise that her claims accrue anew every time P&G applies the nicotine surcharge. Under her theory, each payroll deduction, annual enrollment cycle, and plan year constitutes a separate ERISA violation that restarts the limitations period.  ECF No. 17 at PageID 590-94;

*Chirinian*, 2025 U.S. Dist. LEXIS 144669, at *16-17 and n.6. But that argument conflates continuing effects with continuing violations. The continuing violations doctrine applies when a defendant commits new unlawful acts over time, where a plaintiff merely continues to experience the effects of a single earlier decision. The threshold question, therefore, is whether Plaintiff challenges a series of discrete ERISA violations or the continued operation of a single allegedly unlawful program.

Plaintiff alleges only the latter: that the alleged injury here stems from a single alleged wrong—P&G's adoption and maintenance of an allegedly noncompliant nicotine-surcharge program. But the enrollment mechanics, surcharge structure, and disclosure language that Plaintiff challenges were fixed features of the program from the outset. Recurring payroll deductions merely reflect the continued operation of that same allegedly unlawful policy. They do not constitute new and independently actionable violations that restart the limitations period each time a deduction occurs.

Courts routinely recognize this distinction. Under ERISA, recurring payments or deductions flowing from the same allegedly unlawful decision do not restart the limitations period with each subsequent payment. *See Miele*, 72 F. Supp. 2d 88 at 102. Here, Plaintiff alleges that P&G's nicotine-surcharge program is unlawful because of the way it was structured and communicated. Accordingly, the subsequent payroll deductions are merely the continuing consequences of the same allegedly unlawful program—not new violations. Plaintiff's claims therefore accrued when she first began paying the surcharge in 2017.

Adopting Plaintiff's theory would effectively eliminate limitations periods for wellness-program challenges. Any participant could wait years—or even decades—to sue and then revive otherwise stale claims simply by pointing to a recent payroll deduction flowing from the same

9

allegedly unlawful program.  Neither ERISA nor ordinary accrual principles permit that result. For these reasons, courts within the Sixth Circuit have repeatedly declined to apply the continuing violations doctrine to ERISA claims challenging the ongoing consequences of an earlier benefits decision.  *See, e.g., Greogory v. Goodman Mfg. Co., L.P.*, No. 4:10-cv-23, 2011 U.S. Dist. LEXIS 55490, at *17-19 (E.D. Tenn. May 02, 2011) ("The Sixth Circuit and District Courts within this Circuit, however, have refused to apply the continuing violations doctrine to ERISA claims."); *see also Shapiro v. Fid. Inv. Institutional Operations Co.*, 142 F. Supp. 3d 535, 540 (E.D. Ky. Aug. 27, 2015); *Edwards v. United States*, 371 F. Supp. 2d 859, 869-870 (W.D. Ky. May 16, 2005); *Shahid v. Chrysler, LLC*, No. 08-CV-10871, 2008 U.S. Dist. LEXIS 45470, at *8-9 (E.D. Mich. Jun. 11, 2008).

Notably, Plaintiff cites only one case from within the Sixth Circuit in support of her continuing-violations theory, *Denoewer v. Union County Industries*, 611 F. Supp. 3d 458, 479 (S.D. Ohio 2020).  ECF No. 17 PageID 591.  *Denoewer*, however, was an Americans with Disabilities Act case, not an ERISA case.  Plaintiff identifies no Sixth Circuit ERISA authority applying the continuing-violations doctrine under circumstances like those alleged here, nor does she attempt to distinguish the ERISA decisions cited above declining to apply the doctrine.

In addition, Plaintiff's reliance on *Chirinian* on this point is misplaced.  This Court is not bound by an out-of-circuit district court decision, particularly where its reasoning conflicts with the distinction courts have long drawn between continuing violations and continuing consequences.  More importantly, *Chirinian* stands alone in treating each surcharge deduction as a separately accruing ERISA violation.

In reaching that conclusion, *Chirinian* misapplied the very authorities it purported to distinguish.  The court characterized cases such as *Miele* and *Edes v. Verizon Communications,*

10

*Inc.*, 417 F.3d 133 (1st Cir. 2005), as involving only a "single wrongful act, the effects of which were felt over time." *Chirinian*, 2025 U.S. Dist. LEXIS 144669, at *17 n.6.  But that is precisely Defendants' point here.  *Miele* held that an allegedly erroneous pension calculation did not create a new claim each month benefits were paid.  72 F. Supp. 2d at 102.  And *Edes* held that a plaintiff's continued experience of the effects of an earlier decision did not restart the limitations period.  417 F.3d at 139-40.  Both decisions recognize that recurring payments resulting from a single allegedly unlawful decision do not restart accrual.

*Chirinian* departed from that principle by treating each surcharge deduction as a new violation, even though the deductions arose from the same underlying wellness-program structure. That reasoning cannot be reconciled with traditional accrual principles and would effectively render limitations periods meaningless for ongoing benefit-plan features.  And other courts addressing these same tobacco-surcharge theories have rejected efforts to restart accrual with each surcharge deduction and instead recognized that such claims arise from a discrete program feature with a discernable beginning.  *See Hill v. XPO*, No. 24-CV-1697 (SFR), 2026 U.S. Dist. LEXIS 69336, at *23 (D. Conn. Mar. 31, 2026); *Trout*, 2026 U.S. Dist. LEXIS 89941, at *31-32; *Wiederhold v. Res-Care, Inc.*, No. 4:24-cv-00003, 2026 U.S. Dist. LEXIS 68955, at *11-18 (S.D. Ind. Mar. 31, 2026).

Nor does *Corner Post v. Bd. of Governors of Fed. Rsrv. Sys*, 603 U.S. 799 (2024), assist Plaintiff.  It simply confirms that a claim accrues when the plaintiff first suffers an injury and possesses a complete cause of action; it does not hold that every subsequent consequence of an earlier injury creates a new claim.  *Id.* at 810-11.  Plaintiff's theory establishes that she first suffered the alleged injury when she first paid the surcharge in 2017.

The existence of an ongoing opportunity to modify or renew a plan does not create a new claim each year the plan remains unchanged.  Otherwise, every challenge to an ERISA-governed plan that utilizes annual enrollment would be perpetually revived.  P&G's annual enrollment process is conducted pursuant to the same allegedly unlawful program that Plaintiff challenges.  As such, it does not constitute a new violation.

At bottom, Plaintiff challenges a single wellness-program structure that she admittedly encountered when she first paid the surcharge in 2017.  Her later payroll deductions did not constitute new violations; they merely reflected the continued operation of the same allegedly unlawful program.  Because the continuing-violations doctrine does not transform recurring consequences into new causes of action, Plaintiff's claims accrued no later than 2017 and are barred by the applicable limitations periods.

**B.      Plaintiff's Fiduciary Duty Claims Are Independently Time-Barred Under Section 413 of ERISA.**

Even apart from the continuing violations issue, Plaintiff's fiduciary breach claims are time-barred because she had actual knowledge of the alleged injury when she began paying the surcharge in 2017.  Under ERISA Section 413, the limitations period begins when a plaintiff acquires actual knowledge of the facts underlying the alleged breach.  *Wiederhold*, 2026 U.S. Dist. LEXIS 68955, at *14-18 (citing *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 187 (2020)).  *Wiederhold* held that a participant challenging a tobacco-surcharge program possessed actual knowledge when she began paying the surcharge because she knew the operative facts giving rise to her alleged injury.  *Id.*

The same is true here.  Plaintiff indisputably knew that the surcharge existed, knew when it was deducted from her pay, and knew the circumstances under which it applied.  Indeed, Plaintiff's entire theory is that the surcharge itself was unlawful and constituted the injury for

12

which she seeks relief.  ECF No. 17 at PageID 585-88.  Having known of the surcharge since 2017, Plaintiff possessed actual knowledge of the facts underlying her fiduciary-duty claims when she first paid it.

Plaintiff attempts to distinguish *Wiederhold* by arguing that knowledge of the surcharge did not equate to knowledge of every alleged fiduciary breach.  ECF No. 17 at PageID 592-93.  But Section 413 does not require knowledge of every conceivable legal theory or evidentiary detail. Plaintiff knew the facts central to her claims—that she was being assessed the surcharge she now contends was unlawful.  That knowledge was sufficient to start the limitations clock.  Accordingly, because Plaintiff possessed actual knowledge of the operative facts underlying Counts III and IV no later than 2017, those claims are barred by ERISA Section 413's six-year limitations period.

**C.     Even if the Court Rejects Defendants' Accrual Argument, Plaintiff's Claims Are Limited to a 31-Month Period.**

Even if the Court rejects Defendants' position that Plaintiff's claims accrued in 2017, Plaintiff's own allegations substantially limit the scope of any surviving claims.  Specifically, Plaintiff concedes that a six-year limitations period governs her claims.  ECF No. 17 at PageID 590.  Plaintiff filed this action on February 3, 2026.  Accordingly, the earliest actionable conduct would be conduct occurring on or after February 3, 2020.

Plaintiff also concedes that she stopped paying the surcharge in September 2022.  ECF No. 17 at PageID 589.  Thus, even accepting Plaintiff's limitations theory in its entirety, Plaintiff's alleged injury could extend no later than September 2022.

Taken together, Plaintiff's own allegations establish that any potentially actionable period is limited to approximately 31 months—from February 3, 2020 through September 2022.  As a result, even under Plaintiff's preferred accrual theory, the majority of the conduct she seeks to challenge falls outside the limitations period.  Accordingly, if the Court declines to dismiss

13

Plaintiff's claims as untimely, any surviving claims should be limited to conduct occurring during this narrow 31-month period.

## III.   PLAINTIFF'S REASONABLE-ALTERNATIVE-STANDARD THEORY CANNOT BE RECONCILED WITH THE STATUTE.

### A.   The Statute Expressly Limits Reasonable Alternative Standards to Participants with a Medical Hardship.

Plaintiff's opposition begins from the premise that any participant who fails to satisfy the initial standard in an outcome-based wellness program is entitled to a reasonable alternative standard.  ECF No. 17 at PageID 595-99.  The statute says otherwise.

Congress expressly provided that a wellness program must offer a reasonable alternative standard (or waiver) only to an individual for whom satisfying the otherwise applicable standard is "unreasonably difficult due to a medical condition" or "medically inadvisable."  42 U.S.C. § 300gg-4(j)(3)(D)(i).  By tying entitlement to a reasonable alternative standard to those specific circumstances, Congress identified the participants for whom such an alternative must be provided. Plaintiff's interpretation would eliminate that limitation altogether by extending entitlement to every participant who fails to satisfy the initial standard, regardless of medical condition.  But Congress did not enact such a rule, and courts must give effect to the limitations Congress included rather than interpret them out of the statute.  *See, e.g., Rotkiske*, 589 U.S. 8 at 14-15 (declining to expand an unambiguous statutory limitation set by Congress by adopting a judicially interpreted discovery provision into the statute).

That defect is dispositive here.  Plaintiff never alleges that quitting nicotine was "unreasonably difficult due to a medical condition" or "medically inadvisable."  Accordingly, she has failed to allege that she falls within the category of participants for whom Congress required a reasonable alternative standard.  Because Plaintiff has not alleged that she was entitled to the

14

statutory protection she claims was denied, her claims relating to the alleged failure to provide a reasonable alternative standard fail as a matter of law.

**B.     Plaintiff's "Floor, Not Ceiling" Theory Cannot Be Reconciled with the Statutory Text.**

Recognizing the limitations imposed by Section 300gg-4(j)(3)(D)(i), Plaintiff argues that the medical-hardship provision establishes only a minimum "floor" of participants who must be offered a reasonable alternative standard rather than the outer limit of those entitled to one.  ECF ECF No. 17 at PageID 595-96.  Nothing in the statutory text supports that interpretation.

Congress did not use language suggesting that the categories identified in Section 300gg-4(j)(3)(D)(i) were merely illustrative.  The statute does not say "including," "including but not limited to," or otherwise indicate that participants for whom compliance is "unreasonably difficult" or "medically inadvisable" are simply examples of a broader class entitled to a reasonable alternative standard.  Instead, Congress specifically identified those participants to whom the reasonable alternative standard must be made available.

Plaintiff's reading effectively eliminates the very limitation Congress enacted.  If every participant who failed to satisfy the initial standard were entitled to a reasonable alternative standard, regardless of medical condition, then the statutory references to participants for whom compliance is "unreasonably difficult" or "medically inadvisable" would serve no purpose.  But Courts cannot construe statutes in a manner that deprives express language of independent meaning.  *See, e.g., Perry*, 360 F.3d 519 at 537 ("We may not construe a statute in a manner that renders part of the law superfluous.") (citing *Regions Hosp. v. Shalala*, 522 U.S. 448, 467 (1998)).

Plaintiff points to the regulations' distinction between activity-only and outcome-based wellness programs and argues that outcome-based programs require a reasonable alternative standard for "any individual" who fails the initial standard.  ECF No. 17 at PageID 596-97.  But

15

that argument assumes the validity of the very regulatory interpretation in dispute.  The question before the Court is whether the statute authorizes that expansion.  Nothing in the statutory text permits agencies to transform Congress's medically based eligibility requirement into a universal entitlement.

Had Congress intended to require reasonable alternative standards for all participants who fail the initial standard, it could have said so.  Instead, Congress tied that requirement to specific medical circumstances.  The Court must enforce the statute as written.

**C.**     **The Regulations Cannot Eliminate Limitations Congress Expressly Imposed.**

Plaintiff relies heavily on the 2013 regulations and argues that *Loper Bright* supports the agencies' interpretation of the statute.  ECF No. 17 at PageID 598-99.  It does not.

To be sure, *Loper Bright* recognizes that Congress may delegate authority to agencies to fill gaps in a statutory scheme.  *Id.*  But *Loper Bright* also reaffirmed a fundamental principle of administrative law: agencies may not rewrite statutes or disregard limitations Congress expressly imposed.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).  Thus, before an agency may "fill up the details" of a statutory scheme, there must first be a gap for the agency to fill.

No such gap exists here.  Congress expressly identified the circumstances under which a reasonable alternative standard is required, limiting it to individuals for whom compliance is "unreasonably difficult due to a medical condition" or "medically inadvisable."  Congress did not leave the question of eligibility unresolved, nor did it authorize the agencies to expand that category.  Indeed, Congress demonstrated elsewhere in Section 300gg-4 that it knew how to delegate authority when it wished to do so.  *See, e.g.,* 42 U.S.C. § 300gg-4(a)(9) (authorizing the Secretary to identify additional "appropriate" health-status factors); *id.,* § 300gg-4(j)(3)(A)

16

(authorizing increased reward limits if the Secretaries determine such an increase is appropriate). No comparable delegation appears in Section 300gg-4(j)(3)(D)(i).

The regulations cited by Plaintiff therefore do not merely "fill up the details" of the statutory scheme. ECF No. 17 at PageID 598-99. Rather, they expand entitlement from participants with medical hardship to all participants who fail to satisfy the initial standard. That is not gap-filling; it is a substantive revision of the statute Congress enacted. *Loper Bright* makes clear that agencies may not depart from clear statutory text in the guise of interpretation. *Loper Bright*, 603 U.S. 369 at 392-96.

Plaintiff argues that the regulations merely "operationalize" the statutory framework. ECF No. 17 at PageID 598. But an agency does not operationalize a statute by eliminating a limitation Congress expressly included. Whatever authority the agencies possess to implement ERISA's wellness-program provisions, that authority does not extend to replacing Congress's medically-based eligibility requirement with a universal entitlement to a reasonable alternative standard.

Plaintiff's claims relating to the alleged failure to provide a compliant reasonable alternative standard rise or fall on the validity of the agencies' interpretation. Because that interpretation expands eligibility beyond the limits Congress enacted in Section 300gg-4(j)(3)(D)(i), Plaintiff cannot state a claim based on the alleged inadequacy, timing, or availability of a reasonable alternative standard.

## IV. PLAINTIFF'S INTERPRETATION OF THE REASONABLE ALTERNATIVE FREQUENCY LANGUAGE WOULD NULLIFY THE ONCE-PER-YEAR REQUIREMENT.

Plaintiff's opposition ultimately asks the Court to hold that a wellness program satisfying ERISA's express frequency requirement can nevertheless be unlawful because Plaintiff believes the enrollment window is too short. ECF No. 17 at PageID 599-601. That position cannot be reconciled with the statute or the Department of Labor's guidance.

17

Congress expressly provided that participants need only be given an opportunity to qualify for the reward "at least once per year."  42 U.S.C. § 300gg-4(j)(3)(C).  Plaintiff concedes that this is what the statute requires.  ECF No. 17 at PageID 599.  P&G's program plainly satisfies that requirement by providing participants a month-long enrollment period each year during which they may elect to participate in the Quit For Life program and avoid the surcharge.  *See* ECF No. 13 at PageID 347-49.

The Department of Labor's guidance confirms this conclusion.  As explained in Defendants' opening brief, the DOL addressed a materially indistinguishable scenario in its Affordable Care Act FAQ.  *Id.*  There, the DOL considered a plan that gave participants a single opportunity to enroll in a tobacco-cessation program at the beginning of the plan year and explained that the participant could remain subject to the surcharge for the remainder of the year if that opportunity was not utilized.  The DOL concluded that such a program complies with ERISA's wellness-program requirements.

Plaintiff attempts to dismiss the FAQ by arguing that it does not expressly approve a "31-day window" or an "eleven-month lockout."  ECF No. 17 at PageID 601.  But the DOL's hypothetical contemplates precisely the feature Plaintiff attacks here: a participant who is given one opportunity at the beginning of the year to avoid the surcharge and remains subject to the surcharge for the balance of the year if that opportunity is not exercised.  In other words, the DOL has already considered the circumstance Plaintiff claims is unreasonable and concluded that it is consistent with ERISA.

Unable to overcome the statute's once-per-year frequency requirement or the DOL's guidance, Plaintiff attempts to recast her challenge as one of "reasonableness."  ECF No. 17 at PageID 599-601.  But Plaintiff never explains what enrollment period would satisfy the statute.

18

Would sixty days be enough?  Ninety days?  Six months?  Year-round enrollment?  Plaintiff offers no limiting principle.

Nor can the reasonableness requirement be interpreted in a manner that nullifies the statute's express frequency requirement.  If a wellness program that provides the annual opportunity required by Congress can nevertheless be deemed unlawful whenever a plaintiff disagrees with the timing mechanics, then the once-per-year rule serves no independent function. Statutes should be interpreted so that their provisions work together, not in opposition to one another.

The DOL's FAQ reflects that same understanding by approving a program that offers a single annual opportunity to avoid the surcharge and leaves participants subject to the surcharge for the balance of the year if they do not exercise that opportunity.  Plaintiff's contrary interpretation would therefore require the Court to conclude that the DOL approved conduct that simultaneously violated ERISA's reasonableness requirement—a conclusion unsupported by either the statute or the guidance itself.

At bottom, Plaintiff's argument is not really with P&G's enrollment window—it is with Congress's decision to require only one annual opportunity to qualify for the reward.  But Congress made that policy choice, and the DOL's guidance confirms that a participant may be given a single opportunity at the beginning of the year to avoid the surcharge and remain subject to the surcharge for the balance of the year if that opportunity is not exercised.

Accordingly, Plaintiff has not plausibly alleged that P&G's enrollment window violates ERISA.  Because Plaintiff's claims relating to the alleged inadequacy of the reasonable alternative standard depend on that theory, those claims must be dismissed.

19

## V.     PLAINTIFF'S NOTICE THEORY CANNOT BE RECONCILED WITH ERISA.

### A.     The Physician-Accommodation Regulation Conflicts with the Statute.

Plaintiff's notice claim rests entirely on a regulation requiring plan materials to state that recommendations of an individual's personal physician will be accommodated.  ECF No. 17 at PageID 602-04.  As explained in Defendants' opening brief, that regulation conflicts with the statute Congress enacted.  ECF No. 13 at PageID 350-52.

Congress addressed physician involvement directly.  Section 300gg-4(j)(3)(D)(ii) provides that a plan or issuer "may seek verification, such as a statement from an individual's physician," that a health factor makes compliance with the otherwise applicable standard unreasonably difficult or medically inadvisable.  42 U.S.C. § 300gg-4(j)(3)(D)(ii).  Thus, Congress expressly preserved a plan's discretion to seek physician verification when determining whether a participant qualifies for a reasonable alternative standard.

The regulation cited by Plaintiff fundamentally alters that framework.  Rather than preserving the discretion Congress granted, the regulation requires plans to disclose that physician recommendations will be accommodated.  29 C.F.R. § 2590.702(f)(4)(v).  In doing so, the regulation transforms a discretionary right Congress granted to plans into a mandatory obligation imposed upon them.  But an agency may not rewrite statutory text in this manner.  *See Utility Air Regulatory Group*, 573 U.S. 302 at 328 ("[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.").  Nor may it nullify rights Congress expressly preserved.  As discussed above, Congress knew how to delegate authority when it wished to do so, yet no comparable delegation appears in Section 300gg-4(j)(3)(D).  *See supra* Section III.C.

Plaintiff's notice claim therefore rests on a regulation that exceeds the authority Congress granted.  Because the statute itself does not require the physician accommodation language Plaintiff identifies, her notice claim fails as a matter of law.

**B.** **Plaintiff Improperly Converts an Alleged Disclosure Omission into Program-Wide Illegality.**

Even assuming the regulation is valid, Plaintiff's theory suffers from a second and independent defect: she seeks to transform the omission of a single disclosure statement into wholesale invalidation of an otherwise compliant wellness program. ECF No. 17 at PageID 602-04.

The Complaint itself confirms the point. Plaintiff alleges that Defendants failed to include the physician accommodation disclosure in participant communications and thereby deprived participants of a "fair and informed opportunity" to avoid the surcharge. ECF No. 1 at PageID 22 (¶ 60). Plaintiff further alleges that because the notice requirement was not satisfied, the entire wellness program became unlawful and the surcharge lost safe-harbor protection. *Id.* at PageID 22-23 (¶ 61). Similar allegations appear throughout the Complaint's fiduciary-duty counts, which repeatedly focus on allegedly deficient communications, SPDs, enrollment guides, and omitted disclosures. *See, e.g., Id.* at PageID 25, 28 (¶¶ 69, 81). In short, Plaintiff's theory depends upon converting an alleged disclosure omission into statutory illegality.

Nothing in ERISA supports that result. Congress required disclosure of the availability of a reasonable alternative standard. 42 U.S.C. § 300gg-4(j)(3)(E). Congress did not provide that omission of particular disclosure language automatically invalidates an otherwise compliant wellness program or converts every surcharge assessed under that program into unlawful discrimination.

Plaintiff's cited authorities effectively assume that conclusion rather than demonstrate it. *See, e.g.*, *Trout*, 2026 U.S. Dist. LEXIS 89941, at *26-28. But *Trout* addressed whether the regulation imposed a disclosure obligation. It did not address the separate question presented here:

21

whether Congress intended an alleged disclosure omission to invalidate an otherwise compliant wellness program and expose employers to recovery of every surcharge paid under that program.

The consequences of Plaintiff's position likewise demonstrate its flaw.  Under her theory, a wellness program could satisfy every substantive requirement imposed by Congress and nevertheless become unlawful because of a single omission in disclosure language.  Nothing in ERISA's text suggests Congress intended such sweeping consequences to flow from an alleged disclosure omission.

Plaintiff's notice theory also conflicts with ERISA's remedial framework.  At bottom, Plaintiff seeks to leverage an alleged disclosure omission into a basis for invalidating the entire wellness program and recovering all surcharges paid under it.  *See* ECF No. 1 at PageID 22-23 (¶¶ 60-61); ECF No. 17 at PageID 613-15.  But the Sixth Circuit has consistently rejected efforts to obtain substantive remedies based solely on alleged disclosure deficiencies.

For instance, in *Lewandowski v. Occidental Chemical Corp.*, the court explained that ERISA reflects a "reasoned compromise" between participants' need for disclosure and the burdens expansive liability would impose on plan sponsors.  986 F.2d 1006, 1009 (6th Cir. 1993).  As a result, "ERISA does not remedy procedural violations with a damage award."  *Id.* at 1010.  *See also Briggs v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 774 F. App'x 942, 949-50 (6th Cir. 2019) (reiterating that "ERISA does not provide a substantive remedy for the violation" of "ERISA-imposed disclosure requirements."); *Sears v. Union Cent. Life Ins. Co.*, 222 F. App'x 474, 479 (6th Cir. 2007) (holding that a failure to disclose required information in an SPD was a procedural violation that did not entitle plaintiffs to substantive relief); *Monks v. Keystone Powdered Metal Co.,* 78 F. Supp. 2d 647, 670 (E.D. Mich. 2000), *aff'd*, 10 F. App'x 273 (6th Cir. 2001) (rejecting an attempt to obtain substantive relief based solely on alleged disclosure

deficiencies arising under Department of Labor regulations); *Anderson v. Mr. Grissom's Salads, Inc.*, No. 99-5207, 2000 U.S. App. LEXIS 14511, at \*11 (6th Cir. 2000) (reversing the award of substantive damages for a disclosure violation); *Del Rio v. Toledo Edison Co.*, 130 F. App'x 746, 751 (6th Cir. 2005) (same).

Plaintiff's attempt to transform an alleged notice omission into program-wide illegality therefore conflicts not only with ERISA's text, but also with the Sixth Circuit's settled understanding of ERISA's remedial scheme. Nothing in ERISA's text indicates that Congress intended such sweeping consequences to flow from an alleged disclosure omission, and the Department of Labor lacks authority to create it through regulation. Accordingly, Plaintiff's notice-based claims should be dismissed.

## VI.    ERISA'S FIDUCIARY PROVISIONS DO NOT REACH THE CONDUCT PLAINTIFF CHALLENGES.

### A.    Plaintiff Has Not Alleged a Loss to the Plan or Recoverable Plan Profits.

Plaintiff's fiduciary-duty claims rest on the theory that P&G improperly used surcharge proceeds to offset employer contributions and thereby caused a loss to the Plan or obtained profits that should have belonged to the Plan. ECF No. 17 at PageID 610-12. *Trout* rejected both those theories.

As *Trout* explained, an employer's use of surcharge proceeds to offset its own contributions does not establish either a cognizable loss to the Plan or recoverable profits unless the plaintiff identifies some independent basis showing those amounts belonged to the Plan in the first place. *Trout*, 2026 U.S. Dist. LEXIS 89941, at \*31-35. The court held that an employer's failure to contribute additional assets cannot constitute a loss to the Plan absent an affirmative obligation to make those contributions, and that any alleged profits are not recoverable unless the plaintiff plausibly alleges that those amounts should have belonged to the Plan rather than the employer.

23

*Id*. at \*32.  Because the plaintiff failed to identify any plan provision creating such obligations or entitlements, the fiduciary-duty claims were dismissed.  *Id.*

The same defect exists here.  Plaintiff repeatedly alleges that P&G used surcharge proceeds to offset its own contributions to the Plan.  ECF No. 1 at PageID 24, 26, 29 (¶¶ 66-67, 71, 83).  But Plaintiff does not identify any provision of the Plan requiring P&G to contribute additional assets beyond the amounts actually contributed.  Nor does Plaintiff identify any Plan provision entitling participants, or the Plan, to the alleged surplus she claims should have existed.  Without such allegations, Plaintiff has not plausibly alleged either a loss to the Plan or profits that rightfully belonged to the Plan.  Plaintiff's allegations therefore fail for the same reasons the fiduciary-duty claims failed in *Trout*.

### B.   Plaintiff Has Not Plausibly Alleged that the Surcharge Proceeds Were Plan Assets.

Plaintiff's fiduciary duty and prohibited-transaction claims also depend upon the assertion that the surcharge proceeds became Plan assets.  ECF No. 17 at PageID 611-15.  But although the Complaint repeatedly characterizes surcharge deductions as Plan assets, it does not allege facts explaining when those funds became Plan assets, how they were segregated, whether they remained in P&G's general accounts, or how they were ultimately handled.  *See* ECF No. 1 at PageID 15-16, 24-26, 29 (¶¶ 36-39, 66-73, 83-85).  Instead, Plaintiff assumes the very conclusion she must establish.

Other courts addressing these same tobacco-surcharge theories have rejected similar allegations.  *See e.g. Schultz v. Glens Falls Hosp.*, No. 1:25-cv-00581, 2026 U.S. Dist. LEXIS 64968, at \*33-34 (N.D.N.Y. Mar. 26, 2026); *Noel v. PepsiCo, Inc.*, 2026 U.S. Dist. LEXIS 41586, at \*48; *Fisher v. GardaWorld Cash Servs., Inc.*, No. 3:24-cv-00837, 2025 U.S. Dist. LEXIS 167251, at \*18 (W.D.N.C. Feb. 20, 2026).

24

*Trout* also reached the same conclusion.  There, the court dismissed the prohibited-transaction claim because the complaint failed to plausibly establish that the surcharges were Plan assets whose use could trigger ERISA's prohibited-transaction provisions.  *Trout*, 2026 U.S. Dist. LEXIS 89941, at *38.  Plaintiff's allegations here suffer from the same defect.

### C.  Plaintiff Challenges Settlor Functions, Not Fiduciary Conduct.

Plaintiff's opposition attempts to recast her claims as challenges to fiduciary administration rather than plan design.  ECF No. 17 at PageID 605-10.  The allegations themselves tell a different story.  At their core, Plaintiff's claims challenge who pays the surcharge, when participants may avoid it, what enrollment mechanics apply, and how the wellness program is structured.  Those are classic plan-design decisions.  As the court in *Trout* held, "the imposition of the surcharge was a decision made by Meijer in its settlor capacity, not in its fiduciary capacity."  2026 U.S. Dist. LEXIS 89941, at *36-37.  The court further explained that "the collection of surcharges is a feature of plan design, not an aspect of managing plan assets."  *Id*. at *37; *see also Sec'y of Labor v. Macy's, Inc.,* No. 1:17-cv-541, 2021 U.S. Dist. LEXIS 221603, at *62-64 (S.D. Ohio Nov. 17, 2021) (finding the employer acted as a settlor, not a fiduciary, in creating a tobacco surcharge program and implementing the program according to its terms).

That reasoning applies equally here.  Plaintiff's allegations regarding surcharge eligibility, enrollment timing, and program structure challenge the design of the wellness program itself, not the exercise of fiduciary discretion in administering Plan assets.  Such claims do not implicate ERISA's fiduciary duties.

Plaintiff also argues that participant communications constitute fiduciary conduct.  ECF No. 17 at PageID 609-10.  Even assuming that proposition is correct, *Trout* makes clear that a plaintiff must still plead harm resulting from the allegedly deficient disclosures.  *Trout*, 2026 U.S. Dist. LEXIS 89941, at *37-38.  Plaintiff has not done so.  She does not allege that she attempted

25

to enroll in the cessation program, sought physician accommodation, requested additional information, or would have acted differently had additional disclosures appeared in the Plan materials.  Instead, she simply assumes that the omission of certain language itself establishes fiduciary harm.  *Trout* rejected that theory, holding that a plaintiff who fails to allege that deficient disclosures affected him in any way cannot state a fiduciary-duty claim based on those disclosures.  *Id.*

Accordingly, Plaintiff's fiduciary-duty and prohibited-transaction claims should be dismissed.

## CONCLUSION

For the reasons set forth herein, and in Defendants' Motion to Dismiss, ECF No. 13, the Court should grant the motion and dismiss Plaintiff's Complaint.

Dated: June 25, 2026

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ René E. Thorne*

René E. Thorne*
Rene.Thorne@jacksonlewis.com
Steven Sheesley*
Steven.Sheesley@jacksonlewis.com
601 Poydras Street, Suite 1400
New Orleans, LA  70130
Telephone:    (504) 208-1755

Scott A. Carroll (0062115)
Scott.Carroll@jacksonlewis.com
Timothy C. Dougherty (0093924)
Timothy.Dougherty@jacksonlewis.com
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio  45202
Telephone:    (513) 898-0050

*Attorneys for Defendants*
*\*Admitted Pro Hac Vice*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the parties. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

*/s/ René E. Thorne*
RENÉ E. THORNE

27